IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>QUESTOR LAU, a Hawaii resident, and ALL KINDS DRAFTING SERVICES, LLC, a Hawaii Limited Liability Company,<br><br>　　　　　Defendants.<br>_____ | CV NO. 06-00524 DAE-BMK |

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

　　　　　On April 30, 2007, the Court heard Plaintiff's Motion for Summary Judgment. Brad S. Petrus, Esq., appeared at the hearing on behalf of Plaintiff; Donna A.O. Yoshimoto, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Plaintiff's Motion for Summary Judgment.

BACKGROUND

　　　　　On September 27, 2006, Plaintiff State Farm Fire and Casualty Company filed a Complaint in the instant case seeking a declaratory judgment

regarding its obligation to indemnify and/or to defend Defendants Questor Lau ("Lau") and All Kinds Drafting Services, LLC ("AKDS") in connection with a pending state court lawsuit, Yonashiro v. PMX, Inc., et al., Civ. No. 06-1-0281-02 (VSM) ("State Court Action"), filed on February 16, 2006.  Lau is the draftsman and sole member of AKDS.  (State Court Complaint at ¶ 6; Decl. Lau ¶ 4.)

In the State Court Action, Roy and Annie Yonashiro ("Yonashiros") allege various claims against Lau, individually and collectively, and AKDS, among others, concerning regulatory and building code violations resulting from the design and construction of the Yonashiros' residence.  Specifically, those claims include breach of contract against AKDS, misrepresentation of terms of the contracts against all of the defendants, breach of a duty to act against all defendants, negligence and gross negligence against all defendants, and a claim of unfair and deceptive practices against all defendants under Hawaii Revised States Chapter 480.  (State Court Complaint ¶¶ 20-36.)

Plaintiff, State Farm Fire and Casualty Company, issued two policies in Lau's name: a Renters Policy (effective January 25, 2005-January 25, 2006) and a Personal Liability Umbrella Policy (effective February 1, 2005-February 1, 2006).  (Plaintiff's Ex. B, C.)  Defendants seek indemnification or a duty to defend from Plaintiff.  The Renters Policy provides coverage for "Personal Liability (Each

Occurrence) Damage to Property of Others," among other coverages that are not at issue here.  (Pl's Ex. B.)  The Umbrella Policy provides coverage for "personal liability" and the following underlying exposures: automobile, personal residential liability, and rental liability.  (Pl's Ex. C.)  Both policies contain a definitions and exclusions section.

On January 31, 2007, Plaintiff filed a Motion for Summary Judgment against Defendants, arguing that the policies do not cover AKDS because AKDS is not a named insurer.  Additionally, Plaintiff asserts that the policies do not cover the claims made in the Complaint, for which Plaintiff would owe a duty to defend or to indemnify Lau.  On April 12, 2007, Defendants filed an opposition to the Motion, to which they attached a Declaration of Annie Yonashiro and Lau in lieu of a concise statement of material facts.[1]  See Local Rule 56.1 ("A motion for summary judgment shall be accompanied by a supporting memorandum and separate concise statement detailing each material fact . . . .").  On April 19, 2007, Plaintiff filed its reply.

---

[1] During the hearing on the Motion, Defendants' counsel stated that Defendants accept Plaintiff's Concise Statement of Undisputed Facts.  Plaintiff's counsel also objected to some of the statements made in Annie Yonashiro's declaration, particularly her statement that she did not have a contract with Lau or AKDS.  (A. Yonashiro's Decl. ¶ 4.)  The Court accepts those statements that are not in dispute, and, for those that are in dispute, the Court shall address those statements herein.

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"and  may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Plaintiff maintains that it has no duty to defend or to indemnify AKDS or Lau for the claims against them in the State Court Action. Initially, Plaintiff argues that it has no duty to defend AKDS because AKDS is not a named insured on either policy. Defendants do not dispute that argument. Because Lau is the only named insured and Defendants do not argue otherwise, this Court finds that Plaintiff does not have a duty to defend or to indemnify AKDS. Accordingly, this Court shall review Plaintiff's duty only as it applies to Lau.

Plaintiff argues that its policies do not cover the underlying acts for which Defendants are being sued. Specifically, Plaintiff asserts that the underlying claims do not involve an "occurrence" or a "loss" as defined in the policies or, alternatively, that the claims do not cover "property damage," "bodily injury" or "personal injury," as defined in the policies. Additionally, Plaintiff contends that

the following exclusions in the policies prevent coverage: "intentional acts," "business pursuits," "professional services," and the "contractual liability" exclusion found in the Renters Policy only.  Defendants disagree.

"The insurer's duty to defend its insured is contractual in nature and this court must look to the language of the particular policy involved to determine the scope of that duty." Commerce & Indus. Ins. Co. v. Bank of Hawaii, 832 P.2d 733, 735 (Haw. 1992).  No ambiguity may be created where it does not exist.  See Sentinel Ins. Co. v. First Ins. Co. of Hawaii, 875 P.2d 894, 915 (Haw. 1992).  The duty to defend under Hawaii insurance law is broad, and it arises where a potential for indemnification liability exists.  See Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co., 872 P.2d 230, 233 (Haw. 1994).  Where that potential is raised, an insurer must defend the entire suit, even when claims fall outside of the policy coverage.  See id.  Notwithstanding, when the claims do not allege a cause of action under the policy coverage, no duty to defend exists.  See id.

Plaintiff primarily argues that the underlying claims do not cover damages caused by an "occurrence" or a "loss" under the policies.  If that is true, then this Court will not have to reach Plaintiff's alternative arguments, as Plaintiff maintains, because the policies will not apply to require Plaintiff to indemnify or to defend Defendants.  (Motion at 20.)  Thus, the main question that this Court must

address is whether an "occurrence" or a "loss" as contemplated in the policies triggered the underlying claims.

Under the Renters Policy, the coverage for Personal Liabilities (Coverage L) includes "damages because of bodily injury or property damage . . . caused by an occurrence[.]" (Pl's Ex. B at 12.) Under the Umbrella Policy, the coverage for Personal Liabilities (Coverage L) includes "damages for a loss." (Pl's Ex. C at 3 ¶ 1.) The Renters Policy defines "occurrence" as:

> an <u>accident</u>, including exposure to conditions, which results in:
>
> a. bodily injury; or
>
> b. property damage;
>
> during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

(Pl's Ex. B at 2 ¶ 7) (emphasis added). In turn, "bodily injury" is defined as: "physical injury, sickness, or disease to a person," and it does not include "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." (Id. at 1 ¶¶ 1 and 1.c.) "Property damage" is defined as: "physical damage to or

destruction of tangible property, including loss of use of this property." (Id. at 2 ¶ 8.)

>Similarly, the Umbrella Policy defines a "loss" as:
>
>an <u>accident</u> that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions.

(Pl's Ex. C at 1 ¶ 6) (emphasis added). In turn, the Umbrella Policy defines "personal injury" as: "bodily harm, sickness, disease, shock, mental anguish or mental injury." (Id. at 2 ¶ 9.a.) The Umbrella Policy defines "property damage" as: "physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction." (Id. at 2 ¶ 11.)

Significantly, neither policy defines an "accident," though case law provides guidance on how that term may be defined. The Hawaii Supreme Court has suggested that the term "accident" connotes an unintentional act or omission that is not reasonably foreseeable, which a court must view from the standpoint of the insured. See Hawaiian Holiday Macadamia Nut Co., 872 P.2d at 234. The Ninth Circuit has applied that definition to determine that the term "occurrence" under commercial general liability policies does not include intentional acts or omissions where the result is expected or reasonably foreseeable, such as through acts caused by faulty workmanship or other acts that are contrary to the terms of a

contract. See The Burlington Ins. Co. v. Oceanic Design & Construction, Inc., 383 F.3d 940, 946-49 (9th Cir. 2004) (relying on Hawaiian Holiday Macadamia Nut Co., 872 P.2d at 234). As The Burlington Ins. Co. court recognized, that definition is consistent with the rationale underlying such policies:

> General liability policies . . . are not designed to provide contractors and developers with coverage against claims [that] their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. Rather liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products.

Id. at 948 (citing Anthem Elec., Inc. v. Pac. Employers Ins. Co., 302 F.3d 1049, 1057 (9th Cir. 2002)). Based on that definition and the underlying purpose of commercial general liability insurance policies, an insurer does not have a duty to defend where the underlying claims are confined to breach of contract and fraud causes of action. See id. at 949 (finding that "contract and contract-based tort claims are not within the scope of CGL policies under Hawaii law"); see also Hawaiian Holiday Macadamia Nut Co., 872 P.2d at 235. "Allowing recovery for disputes between parties in a contractual relationship over the quality of work performed would convert this CGL policy into a professional liability policy or a performance bond." Burlington Ins. Co., 383 F.3d at 949. "There is simply no

reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort." WDC Venture v. Harford Accident and Indem. Co., 938 F. Supp. 671, 679 (D. Haw. 1996). Consequently, a commercial general liability insurance policy affords coverage for claims that "sound in negligence," but not if the negligence claim stems from a contract-based or other intentional claim. Hawaiian Holiday Macadamia Nut Co., 872 P.2d at 235; see also CIM Ins. Corp. v. Midpac Auto Center, Inc., 108 F. Supp. 2d 1092, 1101-02 (D. Haw. 2000); CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975, 987 (D. Haw. 1999).

The Yonashiros made numerous allegations concerning construction defects from faulty workmanship that resulted in regulatory and building code violations, thus falling outside of the generally held definition of "occurrence" or "loss." The Yonashiros' claims against Lau, however, are not the direct result of the construction defects. Rather, they stem from an alleged "personal" assurance to fix those defects that the contractor, Eric Nagano/PMX, Inc., caused. (A. Yonashiro Decl. ¶ 6.) According to Annie Yonashiro, Lau's failure to assist the

Yonashiros as promised led to further "settlement and cracking" in their home, as well as to emotional distress. (Id. ¶¶ 7-8.) Because of Lau's alleged failure to assist as promised, the Yonashiros brought claims against him for misrepresentation of terms of the contracts, breach of a duty to act, negligence and gross negligence based on the same underlying facts, and a claim of unfair and deceptive practices under Hawaii Revised States Chapter 480.

      The Yonashiros' Complaint refers to contracts with both PMX, Inc. and AKDS. Notwithstanding, Annie Yonashiro changed course in her declaration,[2] which is attached to Defendants' Opposition, in which she states that she did not have a contract with Lau or AKDS. (A. Yonashiro's Decl. ¶ 4.) Rather, she states that the Yonashiros had a contract with Eric Nagano of PMX, Inc., and that Lau misrepresented the terms and obligations of the Yonashiros' contract with Mr. Nagano/PMX, Inc. (Id. ¶¶ 4, 9.) Defendants argue that, because a contract did not exist between Lau/AKDS and the Yonashiros, this case is distinguishable from such settled contract-based cases as Burlington Ins. Co., 383 F.3d 940.

---

[2] During the hearing, Defendants' counsel stated that Annie Yonashiro's declaration served as a "clarification" of Defendants' allegations in their Complaint. Whether Annie Yonashiro intended her declaration to serve as a clarification or as an amendment is unclear. Regardless, the Court need not make that determination at this time because the difference is immaterial for purposes of this Motion.

(Defendants' Opp. at 7-8.)  Plaintiff responds that Annie Yonashiro's new claim should not be considered because it conflicts with the allegations made in the Complaint.  (Reply at 3.)  Plaintiff further argues that a consideration of such an inconsistent statement would be inappropriate given that Annie Yonashiro did not actually disavow that Lau had a contractual duty to her and her husband.  (Reply at 6.)  Rather, she simply states that she did not have a contract with Lau/AKDS "for the design of [her] home."  (A. Yonashiro Decl. ¶ 4.)

        Whether or not AKDS/Lau had a contract with the Yonashiros could create a genuine issue of material fact to defeat summary judgment, if the existence of that contract actually is material.  The existence of such a contract is not, however, material because, regardless of the existence of such a contract, the allegations against Lau still would be contract-based.  The allegations stem directly from the contract between the Yonashiros and PMX, Inc. and/or the contract between PMX, Inc. and AKDS/Lau, even assuming for now that Lau's promise to assist the Yonashiros was not the direct result of a written, oral, or an implied in fact contract.  See CIM Ins. Corp., 74 F. Supp. 2d at 987 (finding that negligence claims that "stemmed from intentional acts or contract-based claims" did not trigger a duty to defend); see also Kemp v. State of Hawaii Child Support Enforcement Agency, 141 P.3d 1014, 1038 (Haw. 2006) (defining an implied

contract); Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 74 (Haw. 2004) (discussing the evidence necessary to prove the existence of a contract, express or implied). Thus, the absence of a contract between the Yonashiros and AKDS/Lau, even assuming that there is such an absence, does not remove this case from the parameters of Burlington Ins. Co. and Hawaiian Holiday Macadamia Nut Co. because the acts alleged stem directly from intentional and/or contract-based acts.[3] Accordingly, the underlying claims do not constitute "occurrences" or "losses" under the policies.

      Because the terms "occurrence" and "loss" in the respective policies preclude Defendants from seeking indemnification or a duty to defend from Plaintiff, this Court need not address Plaintiff's alternative arguments relating to

---

[3] The only case that Defendants provide in support of their argument that the acts alleged constitute "occurrences" or "losses" is Stuart v. Wesiflog's Showroom Gallery, Inc., 722 N.W.2d 766 (Wis. 2006), which recently was granted certiorari. 727 N.W.2d 34 (Wis. Dec. 6, 2006). In that case, the Court of Appeals of Wisconsin held that a contractor's violation of a regulation prohibiting misrepresentation to induce a person to enter into a home improvement contract constituted an "accident" and, therefore, an "occurrence" under the policies. Not only was that decision based on language found in the Wis. Admin. Code § ATCP 110.02, which the court found did not have an intent or knowledge element, but it is currently under review and runs counter to the decisions in this jurisdiction. See Burlington Ins. Co., 383 F.2d 940; Hawaiian Holiday Macadamia Nut Co., 872 P.2d 230. Thus, this Court shall not consider it here.

"property damage" and the policy exclusions that also may protect Plaintiff from having to defend or to indemnify.

## CONCLUSION

For the reasons stated above, this Court GRANTS Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 30, 2007.



David Alan Ezra
United States District Judge

State Farm Fire and Casualty Company vs. Questor Lau, et al., Civil No. 06-00524 DAE-BMK; ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT